Andrew D. Skale (SBN 211096)
askale@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:  (858) 314-1501

Attorneys for Plaintiff
RARE BEAUTY BRANDS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RARE BEAUTY BRANDS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a Delaware corporation; CLOUDFLARE, INC., a Delaware corporation; NAMESILO LLC, an Arizona company; DOES 1-100,<br><br>Defendants. | Case No. 3:21-cv-7682<br><br>**COMPLAINT FOR:**<br><br>1) **TRADEMARK INFRINGEMENT (DIRECT AND CONTRIBUTORY)**<br>2) **UNFAIR COMPETITION AND FALSE ADVERTISING;**<br>3) **INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE**<br><br>**[JURY TRIAL DEMANDED]** |

Rare Beauty Brands, Inc. ("RBB" or "Plaintiff") brings this suit for trademark infringement, unfair competition and false advertising, and intentional interference with economic advantage, all against defendants Amazon.com, Inc. ("Amazon,"), Cloudflare, Inc. ("Cloudflare"), NameSilo LLC ("NameSilo"), and Does 1-100 (collectively "Defendants"), and alleges as follows:

**SUMMARY OF ACTION**

1. This suit arises out of the willful infringement of Plaintiff RBB's intellectual property rights via a fraudulent clone of Plaintiff's website—and the willful blindness to such infringement by the hosts of the fraudulent site.

2. Plaintiff RBB is a national leader in the development of emerging independent beauty brands. One of its most prominent brands is Patchology, under which it markets a highly

1

successful line of skincare products. RBB also owns the rights to the trademark PATCHOLOGY.

3. In August 2021, RBB learned that the website for Patchology had been "cloned," and reduplicated in its entirety at the domain https://www.egbertlocke.top/ (the "Infringing Site" or "Site"), as part of a fraudulent and unauthorized scheme to divert prospective purchasers from the legitimate source of Patchology products.

4. In addition to unlawfully deceiving RBB's customers, the Infringing Site also infringes RBB's trademark rights.

5. RBB has made repeated requests to the hosts of the Infringing Site to take the Site down. So far, not one of the hosts has complied.

6. With no other way to stop the ongoing violation of its rights, RBB has no choice but no file this lawsuit.

## THE PARTIES

7. RBB[1] is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 83 Morse Street, Suite 8A, Norwood, Massachusetts 02062.

8. On information and belief, Defendant Cloudflare is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 101 Townsend Street, San Francisco, California 94107.

9. On information and belief, Defendant Amazon is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1516 2nd Avenue, Seattle, Washington 98101. Amazon also has numerous facilities in California, including in this District.

10. On information and belief, Defendant NameSilo is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business at 8825 North 23rd Avenue, Suite 10, Phoenix, Arizona 85021.

11. Despite RBB's best efforts, the identity of the creator(s) of the Infringing Site (Does 1-100) is currently unknown.

---

[1] RBB changed its name from Iontera, Inc. on June 1, 2021.

## JURISDICTION AND VENUE

12. This Court's jurisdiction rests upon 28 U.S.C. §§ 1338(a) & (b) and 28 U.S.C. § 1367(a).

13. This Court has jurisdiction over the trademark and unfair competition and false advertising claims pursuant 28 U.S.C. § 1338(a) & (b).

14. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) as all claims herein form part of the same case or controversy.

15. Personal jurisdiction over Cloudflare exists because its principal place of business is in California and because it conduct substantial business in California.

16. Personal jurisdiction exists over Amazon because it conducts substantial business in California. Amazon maintains a substantial workforce in California, has made a strategic commitment to grow its presence in California, and directs a large portion of its sales toward customers in California. Amazon has fulfillment centers in California employing nearly 5,000 employees and reports it has over 10,000 employees statewide.

17. On information and belief, personal jurisdiction exists over NameSilo because it conducts substantial business in California, including providing web hosting services to thousands of entities based and/or operating in California.

18. Venue in this district is proper under 28 U.S.C. § 1391 and 28 U.S.C. §1400 because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Cloudflare's providing of hosting services to the Infringing Site.

## FACTUAL ALLEGATIONS

19. RBB is a leading acquirer and developer of independent beauty brands, and has been in operation since 2007. RBB identifies emerging independent beauty brands, then partners with brand founders to help them scale their brands faster and more efficiently.

20. One of RBB's most successful brands is Patchology, a line of skincare patch products. RBB launched Patchology in 2014, after nearly a decade's experience developing high-tech skin patches in the medical field.

21. RBB owns the rights to the incontestable trademark PATCHOLOGY (USPTO Reg. No. 4,659,247) (the "Patchology Mark"), which was registered on December 23, 2014. The Patchology Mark has been used continuously by RBB since February 15, 2014, and it is incontestable.

22. RBB also created and maintains a website for Patchology products, Patchology.com:



23. In or around mid-August 2021, RBB discovered the existence of the Infringing Site, which copies substantial portions of RBB's own webpage and prominently displays the Patchology Mark:



24. Upon further investigation, RBB received confirmation from its website developer that Patchology.com had been "scraped" and "cloned," without RBB's authorization, in order to create the Infringing Site.[2]

25. RBB was not able to identify the creator(s) of the Infringing Site. Based on publicly available records, however, RBB was able to determine that Cloudflare provided internet hosting services for the Infringing Site.

26. The only way to submit a complaint for abuse to Cloudflare is via a standardized Abuse Report Form. On or around August 26, 2021, RBB utilized this process to report the infringement of its intellectual property. Cloudflare did not provide a response.

27. On or around September 1, 2021, RBB discovered that the Infringing Site was still up, but that it appeared to have replaced Cloudflare with NameSilo as its host. Other publicly available records, however, indicated that Amazon was providing hosting services to the Site.

28. Over the next few weeks, RBB submitted multiple abuse reports to these three hosts using their prescribed procedures for doing so (including a follow-up report to Cloudflare). RBB demanded (1) that the Infringing Site be immediately taken down, and/or (2) that the host provide identifying and contact information for the creator(s) of the Infringing Site so that RBB could deal with them directly.

29. As of the date of this filing, RBB has received no response from any of the hosts.

30. RBB has made every effort, day after day, to rectify this situation without having to file this lawsuit. But it can wait no longer wait to act while its customers continue to be deceived.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1051, *et seq.*
## (All Defendants)

31. RBB incorporates by reference all other paragraphs contained in this Complaint.

32. RBB is the owner and registrant of the Patchology Mark, which mark is incontestable.

---

[2] "Scraping" and "cloning" refer to the process of extracting data from an existing website in order to create an editable replica of the site on a different domain.

33. Does 1-100 created a fraudulent clone of RBB's website that prominently displays the Patchology Mark without RBB's consent or authorization.

34. Such actions are likely to cause and have caused confusion, mistake and deception as to the origin, sponsorship, or approval of products on the Infringing Site, and thus constitute direct trademark infringement with respect to the Patchology Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. On information and belief, Cloudflare, NameSilo, and Amazon have all provided hosting services for the Infringing Site, thereby facilitating the direct infringement perpetrated by Does 1-100.  As hosts, they also have the ability to take down the Site, as well as to disclose the identity and/or contact information of Does 1-100.

36. Despite being notified by RBB that the Infringing Site infringes the Patchology Mark, Cloudflare, NameSilo, and Amazon have failed to take down the Site or to provide any information whatsoever to RBB.

37. On information and belief, Cloudflare, NameSilo, and Amazon derive an economic benefit from such infringement in the form of monetary payments made to them by Does 1-100 in exchange for their provision of hosting services.

38. Cloudflare, NameSilo, and Amazon are able to exercise direct control and practical control over the Infringing Site and the violations above.

39. Cloudflare, NameSilo, and Amazon could take measures to prevent the violations alleged above, but chose not to do so.

40. Cloudflare, NameSilo, and Amazon did not prevent the above violations, but instead encouraged those actions by refusing to take take-down and recall measures to prevent the trademark infringement, false designation of origin, and unfair competition, with respect to the Patchology Mark.

41. The foregoing conduct by Cloudflare, NameSilo, and Amazon constitutes contributory infringement of the Patchology Mark.

42. Defendants' conduct has been willful and intentional, and Defendants' engaged in the actions alleged herein with the purpose of confusing consumers and trading on the goodwill associated with the Patchology mark.

43. RBB has suffered damages in an amount to be established after proof at trial or in the statutory amount.

44. RBB is further entitled to disgorge Defendants' profits for its willful sales and unjust enrichment, and also disgorge the profits of Cloudflare, NameSilo, and Amazon for its actions.

45. This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendants' acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling RBB to its attorney's fees and enhanced damages, including a trebling of its damages and/or disgorged profits.

46. As a direct and proximate result of all Defendants' willful actions, RBB has been damaged and will continue to suffer irreparable harm, unless and until the Infringing Site is taken down.

## SECOND CAUSE OF ACTION
## UNFAIR COMPETITION AND FALSE ADVERTISING
### (15 U.S.C. § 1125 *et seq.*)
### (Does 1-100)

47. RBB incorporates by reference all other paragraphs contained in this Complaint.

48. Does 1-100 created and continue to operate a fraudulent and unauthorized clone of RBB's Patchology.com website, which attempts to falsely persuade customers interested in purchasing Patchology products from RBB that such products may legitimately be obtained through the Infringing Site.

49. On information and belief, the Infringing Site has generated significant revenue for Does 1-100.

50. The foregoing constitute acts of unfair competition, which have caused substantial damage to RBB in the form of lost past and future sales, unrecouped development and advertising costs, and other damages in an amount to be proven at trial, and has a resulted in a significant reputational and other losses for RBB.

51. There is no adequate remedy at law for these acts of unfair competition, and as a result RBB is entitled to injunctive relief in the form of a TRO, preliminary and permanent injunction requiring Does 1-100 to immediately remove and permanently deactivate the Infringing Site.

**THIRD CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE**

**(Does 1-100)**

52. RBB incorporates by reference all other paragraphs contained in this Complaint.

53. RBB has existing business relationships with its customers, who have become accustomed to purchasing Patchology products from RBB online.

54. RBB also has prospective business relationships with potential customers seeking out Patchology products as a result of RBB's extensive marketing efforts.

55. RBB has spent considerable time, money, and resources creating and developing Patchology.com to sell Patchology products directly to consumers.

56. As evidenced by their creation of a fraudulent clone of Patchology.com, Does 1-100 have knowledge of the aforementioned business relationships, and of the value of the Patchology brand.

57. Does 1-100 engaged in independently wrongful conduct by falsely representing to prospective customers that the Infringing Site is a legitimate source of Patchology products.

58. As a result of such independently wrongful conduct, customers who otherwise would have purchased Patchology products through Patchology.com did not do so.

59. RBB has accordingly been damaged in an amount to be proven at trial.

60. There is no adequate remedy at law for these acts of interference, and as a result RBB is entitled to injunctive relief in the form of a TRO, preliminary and permanent injunction requiring Does 1-100 to immediately remove and permanently deactivate the Infringing Site.

**PRAYER**

WHEREFORE, RBB demands the following relief for each cause of action unless otherwise noted:

1. A judgment in favor of Plaintiff RBB and against all defendant on all counts;

2. A TRO, preliminary and permanent injunction requiring Does 1-100 to immediately remove and permanently deactivate the Infringing Site;

3. A TRO, preliminary and permanent injunction requiring Cloudflare, NameSilo, and Amazon, to immediately remove and permanently deactivate the Infringing Site, and to provide identifying and contact information for Does 1-100 to RBB (if not already known to RBB by the time judgment is entered);

4. Damages in an amount to be determined at trial;

5. Disgorgement of all Defendants' profits attributable to the unlawful conduct alleged herein;

6. Pre-judgment interest at the legally allowable rate on all amounts owed;

7. Costs and expenses;

8. Statutory damages;

9. Attorneys' fees and other fees under, among others, 15 U.S.C. § 1117(a) *et seq.* as an exceptional case;

10. Restitution; and

11. Such other and further relief as this Court may deem just and proper.

Dated: September 30, 2021        MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By: */s/Andrew S. Skale, Esq.*
    Andrew D. Skale
    Attorneys for Plaintiff
    RARE BEAUTY BRANDS, INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all issues that are so triable.

Dated:  September 30, 2021                    MINTZ LEVIN COHN FERRIS GLOVSKY
                                                                    AND POPEO PC

                                                          By: */s/Andrew S. Skale, Esq.*
                                                               Andrew D. Skale
                                                               Attorneys for Plaintiff
                                                               RARE BEAUTY BRANDS, INC.